1  JOEL K. BELWAY [60556]
   THE LAW OFFICE OF JOEL K. BELWAY
2  Professional Corporation
   235 Montgomery St., Suite 668
3  San Francisco, CA 94104
   Telephone: (415) 788-1702
4  Facsimile: (415) 788-1517

5  *Attorney for Debtor*
   *BRUGNARA PROPERTIES VI*

6

7

8

9            UNITED STATES BANKRUPTCY COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12

13  In re                          Chapter 11 No. 10-33637

14  BRUGNARA PROPERTIES VI,        **SECOND AMENDED DISCLOSURE
                                   STATEMENT FOR CHAPTER 11 PLAN
15              Debtor.            OF REORGANIZATION
                                   (Dated May 11, 2011)**
16  Federal ID No. 91-2003281

17

18

19

20

21

22

23

24

25

26

27

28

1

Case: 10-33637   Doc# 54   Filed: 05/11/11   Entered: 05/11/11 13:05:53   Page 1 of 21

# I.    DEFINITIONS

## A.    Defined Terms

The following definitions apply in this Plan or Reorganization (the "Plan") and the accompanying Disclosure Statement.  Certain additional terms are defined throughout the Plan and Disclosure Statement.

**"Case"** means this Chapter 11 case filed by the Debtor on September 17, 2010, and pending in this Court as Case No. 10-33637.

**"Cash"** means cash and cash equivalents, including checks and other similar forms of payment.

**"Code"** means the Bankruptcy Code as found at Title 11 of the United States Code, as applicable to this Case.

**"Confirmation"** means entry of the Confirmation Order.

**"Confirmation Order"** means the Court's order confirming the Plan under Code section 1129 and Rule 3020(c).

**"Court"** means the United States Bankruptcy Court for the Northern District of California or, in the event such court ceases to exercise jurisdiction over the Case, such court or adjunct thereof which thereafter exercises jurisdiction over the Case or any aspect of it.

**"Debtor"** means Brugnara Properties VI, the debtor in this case.

**"Disbursing Agent"** means Brugnara Properties VI or any other person, entity or entities designated by the Reorganized Debtor to act in such capacity for the purpose of disbursing payments provided for in the Plan, and to assist in carrying out the terms of the Plan.

1     **"Effective Date"** means the first business day to fall at
2     least 11 days from the date of Confirmation.
3     **"Filing Date"** means September 17, 2010.
4     **"Final Order"** means an order or judgment of the Court or the
5     District Court as to which: a) the time for appeal has expired
6     and no notice of appeal has been timely filed, or b) any appeal
7     or petition for writ that has been filed has been withdrawn,
8     dismissed or determined leaving the Court's order intact, and
9     which is not subject to further review by appeal or otherwise.
10    **"Non-classified Claims"** means Claims of the type described
11    in Article V of the Disclosure Statement.
12    **"Plan"** means the Debtor's Plan of Reorganization submitted
13    along with this Disclosure Statement, as may be amended in the
14    future.
15    **"Post Petition"** means events occurring or matters arising
16    after the Filing Date and not otherwise deemed to have occurred
17    or arisen before then.
18    **"Pro rata"** means proportionately so that the ratio of the
19    consideration distributed on account of an Allowed Claim in a
20    class or other defined group of claims to the consideration
21    distributed on account of all Allowed Claims in the class or
22    group is the same as the ratio of such Allowed Claim to all
23    Allowed Claims in the class or group.
24    **"Real Property"** means Debtor's real property located at 224
25    Sea Cliff Avenue, San Francisco, California.
26    **"Reorganized Debtor"** means Debtor on and after the Effective
27    Date of the Plan.
28

Case: 10-33637   Doc# 54   Filed: 05/11/11   Entered: 05/11/11 13:05:53   Page 3 of 21

"**Retained Claims**" means all claims that Debtor had as of the Filing Date, all claims that could be asserted by a trustee in the Case immediately before Confirmation (including claims arising under Code sections 362, 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, or 553 or otherwise), all claims listed in Debtor's Bankruptcy Schedules, including the claims against Jorei Enterprises, LLC and all claims that arose in favor of the Estate after the Filing Date, except as any of the foregoing claims have been expressly and explicitly waived in writing with Court approval.

"**Rules**" means the Federal Rules of Bankruptcy Procedure as applicable to the Case.

"**UST**" means the representative of the Office of the United States Trustee with responsibility for monitoring developments in the Case.

### B.   Undefined Terms

Terms used herein but not defined by the Plan or Disclosure Statement, but which are defined by the Code, have the meanings given to that term in the Code unless the context of the Plan clearly indicates or requires otherwise.

### C.   Rules of Construction, Interpretation and Time

In the event of any inconsistency between the Plan and the Disclosure Statement, the provisions of the Plan are controlling. The rules of construction set forth in Code section 102 shall apply to the Plan and the Disclosure Statement.  In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) shall apply.

### D.   Applicable Law

Case: 10-33637   Doc# 54   Filed: 05/11/11   Entered: 05/11/11 13:05:53   Page 4 of 21

| | |
|---|---|
| 1 | Except insofar as federal law applies or the Plan |
| 2 | specifically provides otherwise, the interpretation, |
| 3 | implementation and enforcement of the Plan are governed by |
| 4 | California law. |
| 5 | **E.   Integration and Modification** |
| 6 | Except as expressly provided otherwise in the Plan, (a) the |
| 7 | Plan and any exhibits to it constitute the entire and complete |
| 8 | agreement among the parties with claims or interests in Debtor's |
| 9 | estate with respect to the matters addressed and transactions |
| 10 | contemplated in the Plan, superseding any prior or |
| 11 | contemporaneous oral or written agreements or representations |
| 12 | concerning such matters or transactions, and (b) the rights or |
| 13 | obligations contained in the Plan can be modified only (i) by a |
| 14 | writing signed by the party to be held to the altered term or |
| 15 | (ii) under Code Section 1127, if the modification has a material |
| 16 | and adverse effect on the rights or remedies of nonsignatories. |
| 17 | **II.   BACKGROUND** |
| 18 | Debtor is a California corporation.  Debtor's only asset is |
| 19 | its ownership of real property located at 224 Sea Cliff Avenue, |
| 20 | San Francisco, California (the "Real Property").  The Real |
| 21 | Property is a single family residence and is the home of Debtor's |
| 22 | principal, Katherine Brugnara, her husband and four children. |
| 23 | Debtor acquired title to the Real Property in 2001 for |
| 24 | $8,000,000 and invested approximately $2,000,000 in capital |
| 25 | improvements.  The Real Property was appraised in August 2008 at |
| 26 | a value of $17,800,000.  Debtor believes that the value of the |
| 27 | Real Property has declined since that appraisal.  Debtor's |
| 28 | current estimate is that the Real Property is worth between $14 |

5

million and $15 million based on a current valuation by Mark
Levinson of Sotheby's International.

The secured debt against the Real Property consists of: (i)
property taxes owed to the City and County of San Francisco; (ii)
a first deed of trust in favor of Wachovia/Wells Fargo
("Wachovia"), which has filed a proof of claim in the sum of
$7,254,033.19; and, (iii) a second deed of trust in favor of
Jorei Enterprises, LLC ("Jorei").  The principal amount of the
debt to Jorei is $5,000,000; it arises out of a loan made by
Jorei to Brugnara Properties I, LP ("Brugnara I") and originally
secured against an office building owned at the time by Brugnara
I at 351 California Street, San Francisco, California.  This
Debtor was a guarantor of the loan by Jorei to Brugnara I.

During a prior Chapter 11 case by Debtor, No. 09-30038 (the
"Prior Case"), a settlement was reached between Debtor and Jorei.
This Court approved the settlement on June 3, 2009.  With respect
to this Debtor, the settlement provided in pertinent part for: a
reduction of Jorei's secured claim from $11,350,000 (plus accrued
interest) to $5 million; provision that the Jorei claim would be
due in full in five years, but no interest would accrue and no
payments would be due for the five years as long as Debtor did
not default under its agreement with Jorei and was able to cure
any default to Wachovia.

### III. SIGNIFICANT PRE-BANKRUPTCY EVENTS

The Prior Case was dismissed on August 27, 2009, upon
Debtor's motion (which was originally denied but after
reconsideration, granted).  One of the problems for Debtor's
remaining in the earlier bankruptcy was its inability to

negotiate with Wachovia for modification of the loan secured by the first deed of trust against the Real Property. Following the dismissal of the Prior Case, Debtor was prepared to go back to Wachovia and resume negotiations for modification, which the bank would not discuss during the pendency of the Prior Case.

Those efforts were to be led by Luke D. Brugnara. Mr. Brugnara's negotiations were underway but not concluded when in June 2010, following his having suffered a federal criminal conviction, Mr. Brugnara was incarcerated. Following the conviction, in cases No. CR 08-0222-wha-MAG and CR 08-0236-mmc-MAG, each entitled *United States of America vs. Luke Brugnara* (collectively, the "Criminal Cases"), Mr. Brugnara was originally ordered to surrender to a federal facility pursuant to his sentence on August 30, 2010. However, in June 2010, Mr. Brugnara was ordered to report to a federal facility earlier and he did so on June 15, 2010.

At the present time Mr. Brugnara is serving his sentence in a federal correctional facility in Texarkana, Texas. Debtor, through Katherine Brugnara, who became the principal of the Debtor very suddenly in 2010 upon Mr. Brugnara's radical change in circumstances, is informed that Mr. Brugnara will be released from federal custody as early as June 2011, or no later than December 2011.

Mrs. Brugnara attempted to pick up the thread of discussions with Wachovia regarding a modification, but without success. She experienced the frustration that is common knowledge regarding loan modifications, and before she could make any headway with

Case: 10-33637    Doc# 54    Filed: 05/11/11    Entered: 05/11/11 13:05:53    Page 7 of 21

1  Wachovia, the bank recorded a notice of default and then

2  published a notice of a trustee's sale for its deed of trust.  To

3  stop that trustee's sale, this new Chapter 11 case was filed.

4      With Mr. Brugnara's sudden departure from the Bay Area and

5  his subsequent residence under circumstances that preclude all

6  but the most limited communication between him and Katherine

7  Brugnara, Mrs. Brugnara has been hard-pressed to deal with not

8  only the disruption to the lives of her and her children, but, to

9  the point here, with the legal issues regarding Wachovia's loan.

10  Mrs. Brugnara has also been put in a position where, although she

11  has, under the community property laws, ownership of significant

12  joint assets with Luke Brugnara, she has no effective access to

13  those assets other than the Real Property owned by the Debtor.

14      Mrs. Brugnara is informed that the United States Government,

15  in a pre-sentencing report ("PSR") furnished to the Court in the

16  Criminal Cases, ascertained that Mr. Brugnara's net assets, of

17  which Mrs. Brugnara owns an undivided 50% community interest, are

18  in excess of $20,000,000.00.  (Mrs. Brugnara has been attempting

19  to obtain a copy of the PSR and, if and when she is able to

20  obtain a copy and subject to privacy issues that may pertain,

21  will provide an appropriately redacted copy it to the UST.)

22      Mr. Brugnara's sudden absence and the consequent limitations

23  on her access to the community funds owned by Mr. and Mrs.

24  Brugnara contributed to the filing of this Chapter 11 case; the

25  ability to obtain access to those funds upon Mr. Brugnara's

26  release from custody will provide the means to bring any and all

27  arrearages current on the Wachovia loan and to pay any

28  outstanding tax claims of the City and County of San Francisco.

## IV.  SIGNIFICANT EVENTS IN THE CHAPTER 11 CASE

**A.  Administrative Matters:**

1.  **Appointment of Responsible Individual:** On October 19, 2010 the Court entered its Order Designating Responsible Individual.  By this Order Katherine Brugnara, the president of the Debtor, was appointed as the individual responsible for the duties and obligations of the Debtor during the Case.

2.  **Appointment of Counsel:** On November 4, 2010, the Court approved the appointment of the Law Office of Joel K. Belway as Chapter 11 counsel for the Debtor over the objection of the UST.

3.  **Meeting of Creditors:** The meeting of creditors held pursuant to Code section 341 was held on October 26, 2010.  The meeting was conducted by the Office of the U.S. Trustee.

**B.  Other Matters:**

1.  **Claims Bar Date:**  The Court established January 24, 2011 as the deadline for filing pre-petition (non-governmental) claims against the Debtor.  Governmental claims must be filed by 180 days from the Filing Date.

2.  **Monthly Operating Reports:** Debtor is in the process of bringing current its monthly operating reports since the petition.

3.  **Insurance:** Debtor is informed that insurance placed against the Real Property by Wachovia sufficiently insures the cost of replacing the improvements to the Real Property.  Debtor is informed that the amount of current insurance continues the amount of coverage that was in place before the filing of this Chapter 11 case.

9

Case: 10-33637   Doc# 54   Filed: 05/11/11   Entered: 05/11/11 13:05:53   Page 9 of 21

4.  **Corporate Tax Returns:**  Debtor is in the process of filing all corporate tax returns that are due.

5.  **Claims Against Debtor's Estate:** Debtor's schedules reflect secured claims of approximately $11,140,000, and unsecured claims of $1,000.  Wachovia was scheduled with a secured claim of $6,140,000; it has filed a claim for $7,254,033.19.  The City and County of San Francisco ("City") has filed a claim in the amount of $337,964.63 for taxes secured by the real Property in the sum of $337,964.63 for real property taxes for tax years 2008-09, 2009-10 and 2010-2011.  The California Franchise Tax Board ("FTB") has filed a claim in the amount of $3,005.14 for corporate income taxes of $800 per year plus interest and penalties for tax years 2008, 2009 and 2010.

## V.   SUMMARY OF THE PLAN OF REORGANIZATION

### A.   Goal and Funding of the Plan

By the Plan Debtor seeks to satisfy creditor claims.  The Plan is a contract between the Debtor and its creditors and interest holders, and therefore is binding on the parties.  To become effective the Plan must be accepted by the vote of at least one class of creditors whose claims are impaired, and the Plan must be confirmed by order of the Court.

### B. Funding of the Plan:

Funding of the payments to Class 1 will come from funds Debtor will raise from its principal.  Debtor's principal will inject funds necessary to make the payments to Class 1.  Debtor's principal, Katherine Brugnara, holds an undivided community property interest in assets which she is informed exceed $20 million in value.  Her access to those assets has been and

10

remains impeded by the federal incarceration of her husband, Luke Brugnara. Mrs. Brugnara is informed that Mr. Brugnara will be released from federal custody as soon as June 2011 or no later than December 2011. (Mr. Brugnara was sentenced to 18 months and began the sentence in June 2010.)

Debtor anticipates that the payment to Class 2, which is not due for four years, will come via a refinance or sale of the Real Property or the injection of funds by the Debtor's principal. Payments to the Classes 3 and 4 will come from an infusion of capital from Debtor's principal.

**C.    Post Petition – Post Confirmation Operations:**

Debtor does not have "operations" as that term is normally used in a Chapter 11. Debtor will file post-confirmation quarterly reports required by the U.S. Trustee, and pay the required U.S. Trustee fees until such time as Debtor is prepared to apply for a Final Decree.

**D.    Summary of the Plan and Classification of Claims and Intersts:**

**1.    Non-Classified Claims**

Administrative Claims: Holders of allowed administrative claims will receive payment of their claims in full on the Effective Date or within ten days from the date the claim becomes an allowed administrative claim, whichever occurs later unless the Debtor and administrative creditor agree to other less favorable treatment. Debtor does not anticipate there being administrative claims other than the tax claim of the FTB (which has been partially paid by Debtor's principal) and the attorney's fees of its counsel. Debtor's best estimate at this time is that

11

the administrative claims for its counsel will be $20,000 and the
balance of the FTB's claim will be less than $1,500.  Debtor's
counsel received a pre-petition retainer of $7,000 from Katherine
Brugnara.

    **2.  Classified Claims:**

    **Class 1 – Secured Claim of Wachovia:** Class 1 consists of the
allowed secured claim of Wachovia which is secured in first
position against Debtor's real property located at 224 Sea Cliff
Avenue, San Francisco, California.  The Class 1 claim is
impaired.

    **Class 2 – Secured Claim of Jorei Enterprises, LLC:** Class 2
consists of the allowed secured claim of Jorei, which claim is
secured in second position against Debtor's real property located
at 224 Sea Cliff Avnue, San Francisco, California.  The Class 2
Claim is unimpaired.

    **Class 3 - Secured Claim of the City and County of San
Francisco:** Class 3 consists of the claim of the City and County
of San Francisco, secured by the real Property.  The Class 3
claim is unimpaired.

    **Class 4 – Claims of all General Unsecured Claims:** Class 4
consists of the allowed general unsecured claims.  The Class 4
claims are impaired.

    **Class 5 – Interests of Debtor's Interest Holder:** Class 5
consists of all holders of interests in the Debtor.

    **VI.  TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

    Holders of the Classified Claims and interests described
above shall receive distributions as set forth below in full
satisfaction of such Allowed Claims or interests.  In no event

SECOND AMENDED DISCLOSURE STATEMENT FOR
CHAPTER 11 PLAN OF REORGANIZATION

shall the holder of an Allowed Claim receive a distribution of a value greater than 100% of the amount of such allowed claim.

**Class 1 – Secured Claim of Wachovia:** The allowed Class 1 claim shall have two treatment options from which to select. Under Option A the claim will be deemed a $5,000,000 claim as of the Confirmation. The claim shall accrue interest at 4% per annum. Payments shall be interest only and the debt shall be due in full 10 years from the Confirmation. Under Option B, the claim will be allowed in the amount of $6,140,000, and shall accrue interest at 3% interest only, due in 10 years. Under Options A and B, the loan shall be deemed reinstated upon Confirmation. If the Class 1 claim does not select an option (selection must be made on or before the voting deadline on the plan) it will be deemed to have selected Option A.

The right to payments under either option shall begin accruing on the Effective Date. Payments shall commence in the month of March 2012; on March 15, 2012 all payments due on or after the Effective Date shall be made on the allowed claim. Payments shall be due by the 15th of each month and shall be deemed late if not paid by the 25th of each month. The Class 1 creditor is impaired.

**Class 2 – Secured Claim of Jorei Enterprises, LLC:** The allowed Class 2 claim shall be treated pursuant to the terms of the settlement agreement between Debtor and Jorei. Pursuant to that agreement the claim shall be due in four years and shall not accrue interest except as provided in the settlement agreement. The Class 2 creditor is not impaired.

SECOND AMENDED DISCLOSURE STATEMENT FOR
CHAPTER 11 PLAN OF REORGANIZATION

Case: 10-33637   Doc# 54   Filed: 05/11/11   Entered: 05/11/11 13:05:55   Page 13 of
21

1  **Class 3 – Secured Claim of the City and County of San**
2  **Francisco:** The allowed Class 3 claim shall be paid in full in
3  three equal installments, due on March 15, 2012, May 15, 2012 and
4  July 15, 2012.  The allowed Class 3 claim shall retain all rights
5  and remedies regarding any delinquent property taxes owed by the
6  Debtor.  The Class 3 claim is unimpaired.

7  **Class 4 – Claims of all General Unsecured Claims:** Class 4
8  consists of the allowed general unsecured claims of all
9  creditors.  Class 4 claimants will receive a pro rata share of
10 $1,000 to be distributed three months from the Effective Date.
11 The Class 4 creditors are impaired.

12 **Class 5 – Interests of Debtor's Interest Holder:** Class 5
13 consists of all holders of interests in the Debtor.  Class 5
14 interest holders will not receive any distributions under the
15 plan.  Their interests, however, will not be canceled and holders
16 will retain their interests.  Class 5 is not impaired under the
17 Plan.

18                **VII. MEANS FOR IMPLEMENTATION OF THE PLAN**

19     **A.    Funding of the Plan:** As noted above, funding of the
20 payments to Class 1 will come from funds Debtor will receive from
21 its principal.  Debtor's principal will inject the funds
22 necessary to make the payments to Class 1.  Debtor anticipates
23 that the payment to Class 2, which is not due for four years,
24 will come via a refinance or sale of the Real Property or from
25 capital contributed by Debtor's principal.  Payments to the Class
26 3 and 4 creditors will come from an infusion of capital from
27 Debtor's principal.
28



14

**B. Distribution of Funds:** The Disbursing Agent will distribute funds on account of the allowed claims pursuant to the terms of the Plan. The Disbursing Agent shall also be responsible for reserving amounts for payment of any disputed claims until such time that the disputed claims are either disallowed or become allowed claims.

**C. Post-Confirmation Operations and Administration:** Until such time as a Final Decree is entered the Reorganized Debtor will file the necessary post-confirmation operating reports and pay any required fees to the U.S. Trustee. The post-confirmation members/officers of the Reorganized Debtor shall be Katherine Brugnara. Professional fees and costs incurred post-confirmation in connection with implementation of the Plan shall be paid in the ordinary course of business and without the need of review or approval by the Court.

**D. Objections to Claims:** The Reorganized Debtor will have the right and standing, but not the obligation to:

1. Object to, contest and litigate to Final Order (including the exhaustion of any appeals) the allowance of any claim, whether or not such claim is listed in the Debtor's Schedules as disputed, contingent or unliquidated; or

2. As provided by Code Section 502(c), ask the Court to estimate any claim for the purpose of voting on confirmation of the plan by means of filing an objection to such claim. The Disbursing Agent shall also have the authority to settle, compromise, or negotiate the withdrawal of objections to Disputed Claims or the withdrawal of claims themselves.

Case: 10-33637    Doc# 54    Filed: 05/11/11    Entered: 05/11/11 13:05:53    Page 15 of 21

**E.     Payment Upon Resolution of Disputed Claims:** While the Reorganized Debtor will reserve amounts for any disputed claims, the Reorganized Debtor will not make any payments to holders of a disputed claim until such disputed claim becomes an allowed claim and all counter-claims of the Debtor against the holder of such Claim have been fully resolved, either by means of a settlement or a Final Order.

**F.     Treatment of Executory Contracts and Unexpired Leases:** All leases or executory contracts will be assumed upon confirmation of the Plan.  Any lessee asserting a claim or a "cure" under any lease must file a claim within 30 days of the Effective Date.

**G.     Income Tax Consequences of the Plan:** The Plan may give rise to tax consequences to creditors and interest holders.  Each creditor and interest holder is urged to consult with his, her or its own tax advisor regarding the federal, state and local tax consequences of the Plan.  Holders of allowed claims will cooperate with the Reorganized Debtor to the extent the Reorganized Debtor requires said holders to provide tax information in connection with their receipt of Disbursements under the Plan.

<strong>VIII.     THE PLAN CONFIRMATION PROCESS</strong>

**A.     Confirmation Standards:**

For the Plan to be confirmed, the Court must determine that the requirements of Code Section 1129 have been satisfied.  Among other things, Code Section 1129 requires at least one class of claims that is impaired under the Plan to have voted to accept the Plan.

SECOND AMENDED DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF REORGANIZATION

**B.    Classification of Claims:**

The Code requires that a plan of reorganization place each claim in a class with other claims that are "substantially similar". Generally speaking, each secured claim is separately classified and claims are grouped based on their relative priority or similarity. Debtor believes that the classification system set forth in Plan and described in this Disclosures Statement meets the requirements of the Code.

**C.    Creditor Acceptance – Voting on the Plan:**

In order for the Court to determine that the Plan has been accepted, two-thirds in amount and a majority of the number of allowed claims in each impaired class of creditors voting on the Plan must vote to accept the Plan. Only the votes of holders of allowed claims will be counted unless the Court orders otherwise. In order to vote a holder of a claim must complete and sign the ballot provided along with the Disclosure Statement and Plan and mail it to Debtor's counsel: Law Office of Joel K. Belway, P.C., 235 Montgomery Street, Suite 668, San Francisco, California 94104. The date by which the ballots must be received is set forth in the Notice accompanying the Disclosure Statement and Plan. If a class that is impaired under the Plan votes to not accept the Plan, Debtor will seek confirmation under Code Section 1129(b), which is discussed below in the section entitled "Cramdown of the Plan".

**D.    Best Interest Test:**

Notwithstanding acceptance of the Plan by creditors, Code Section 1129(a)(7) requires the Court to independently determine that the Plan is in the best interest of holders of Allowed

SECOND AMENDED DISCLOSURE STATEMENT FOR
CHAPTER 11 PLAN OF REORGANIZATION

Claims whose Claims are part of an impaired class.  The "best
interest" test requires that the Court find that the Plan
provides to each member of an impaired class of claims a recovery
that has a present value at least equal to the present value of
the distribution that each claim holder would receive from the
Debtor if the Debtor were liquidated through a Chapter 7
proceeding.

Debtor believes that the best interests of creditors are
served by Confirmation of the Plan.  No greater benefit could be
achieved by the secured and unsecured creditors under Chapter 7.
The Plan provides for full payment of principal due at present
day value to all secured and unsecured creditors.  It also
preserves the appreciation and capital investment of the Debtor
which would be lost under Chapter 7.

### E.    Feasibility of the Plan:

As a condition to Confirmation the Court must find that
Confirmation is not likely to be followed by liquidation or the
need for further reorganization.  The Court must therefore find
that the Plan is feasible.  Debtor contends its Plan is feasible.
If the Plan is confirmed, Debtor will cure and reinstate the
Class 1 claimant, and would have four years to pay Class 2
through a sale or refinance at a time when the value of the Real
Property would support such an effort.  With respect to payments
to Class 3, Debtor's principal will inject funds required to make
such payments.

### F.    Modification of the Plan:

Debtor may modify the Plan at any time before Confirmation.
In the event of a modification to the Plan, the Court may require

SECOND AMENDED DISCLOSURE STATEMENT FOR
CHAPTER 11 PLAN OF REORGANIZATION

1   Debtor to provide notice of the modification.  Any holder of a

2   claim that has accepted or rejected the Plan prior to

3   modification, will be held to have accepted or rejected the

4   modified Plan unless, the Court determines that the holders of

5   the claims should be granted additional time to change the

6   previous vote, and the holder does in fact change his, her or its

7   vote.

8           **G.    Cramdown of the Plan:**

9           Section 1129(b) of the Code permits a Debtor to confirm a

10  Plan even if one or more classes of claimants does not accept the

11  Plan.  In the event that an impaired class fails to accept the

12  Plan, Debtor intends to seek Confirmation by way of a cramdown

13  pursuant to Code Section 1129(b).  In order for Debtor's Plan to

14  be confirmed, the claims in the impaired class that voted to

15  reject the Plan must receive treatment that is "fair and

16  equitable" as that term is described in Code Section 1129(b)(2).

17  Debtor believes it will be able to satisfy this requirement if

18  necessary.

19          **IX.   EFFECT OF CONFIRMATION**

20          **A.    Revesting:**

21  Except as otherwise provided by the Plan, Confirmation revests

22  all property of the estate in the Reorganized Debtor.

23          **B.    Discharge:**

24  Confirmation of the Plan shall bind all holders of claims and

25  interests, whether or not they accept the Plan.  Confirmation of

26  the Plan will discharge Debtor from all debts pursuant to Code

27  Section 1141(d)(1).  Upon Confirmation, all holders of claims and

28  interests shall be precluded from asserting any further claim

19

1   against the Debtor's assets or against the Reorganized Debtor to

2   the extent any such claim is based upon any occurrence or

3   transaction or other activity occurring prior to the Confirmation

4   date.

5                   **X. MODIFICATION OF THE PLAN**

6        Debtor may modify the Plan at any time before Confirmation.

7   In the event of a modification to the Plan, the Court may require

8   Debtor to provide notice of the modification by way of additional

9   disclosures to the creditors and interest holders.  Any holder of

10  a claim that has accepted or rejected the Plan prior to

11  modification, will be held to have accepted or rejected the

12  modified Plan unless the Court determines that the holders of

13  claims should be granted additional time to change the previous

14  vote, and the holder does in fact change his, her or its vote.

15             **XI.  JURISDICTION RETAINED BY THE COURT**

16       Until the Case is closed, the Court shall retain

17  jurisdiction under 28 U.S.C. Sections 1334 and 157 over the

18  estate in any proceedings arising in the Case, arising under the

19  Code, or related to the Case in order to carry out the

20  provisions, purposes and intent of the Plan or any modification

21  thereto, including:

22       A. Modification of the Plan under Code Section 1127(b);

23       B. Interpretation of the Plan;

24       C. Entry of orders to implement or enforce the Plan;

25       D. Determination of the allowability and amount of claims;

26       E. Determination of the Debtor's or the estate's tax

27          liability as necessary;

28

1   F. Approval of the assumption, assignment or rejection of

2      any executory contract or unexpired lease of the Debtor

3      to the extent such assumption, assignment or rejection

4      has not occurred prior to Confirmation;

5   G. Awarding compensation or reimbursement of professionals;

6   H. Adjudicating controversies, including those involving

7      Retained Claims; and

8   I. Entry of a decree and order closing the Case.

9

10  Dated: May 11, 2011          BRUGNARA PROPERTIES VI

11

12                               By: /s/ Katherine L. Brugnara
                                     KATHERINE L. BRUGNARA
13                               Its: President

14

15  Dated: May 11, 2011          THE LAW OFFICE OF JOEL K. BELWAY

16                               Professional Corporation

17                               By: /s/ Joel K. Belway
18                                   JOEL K. BELWAY
                                     Attorney for Debtor
19

20

21

22

23

24

25

26

27

28

Case: 10-33637   Doc# 54   Filed: 05/11/11   Entered: 05/11/11 13:05:55   Page 21 of
21