1   JOEL K. BELWAY [60556]
     THE LAW OFFICE OF JOEL K. BELWAY
2   Professional Corporation
     235 Montgomery St., Suite 668
3   San Francisco, CA 94104
     Telephone: (415) 788-1702
4   Facsimile: (415) 788-1517

5   *Attorney for Debtor*
     *BRUGNARA PROPERTIES VI*

6

7

8

9            UNITED STATES BANKRUPTCY COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11             SAN FRANCISCO DIVISION

12

13   In re            Chapter 11 No. 10-33637

14   BRUGNARA PROPERTIES VI,    **SECOND AMENDED DISCLOSURE**
                          **STATEMENT FOR CHAPTER 11 PLAN**

15             Debtor.     **OF REORGANIZATION, AS MODIFIED**

16   Federal ID No. 91-2003281

17

18

19

20

21

22

23

24

25

26

27

28

Case: 10-33637   Doc# 60   Filed: 06/02/11   Entered: 06/02/11 12:04:49   Page 1 of 22

# I. DEFINITIONS

**A. Defined Terms**

The following definitions apply in this Plan or Reorganization (the "Plan") and the accompanying Disclosure Statement. Certain additional terms are defined throughout the Plan and Disclosure Statement.

**"Case"** means this Chapter 11 case filed by the Debtor on September 17, 2010, and pending in this Court as Case No. 10-33637.

**"Cash"** means cash and cash equivalents, including checks and other similar forms of payment.

**"Code"** means the Bankruptcy Code as found at Title 11 of the United States Code, as applicable to this Case.

**"Confirmation"** means entry of the Confirmation Order.

**"Confirmation Order"** means the Court's order confirming the Plan under Code section 1129 and Rule 3020(c).

**"Court"** means the United States Bankruptcy Court for the Northern District of California or, in the event such court ceases to exercise jurisdiction over the Case, such court or adjunct thereof which thereafter exercises jurisdiction over the Case or any aspect of it.

**"Debtor"** means Brugnara Properties VI, the debtor in this case.

**"Disbursing Agent"** means Brugnara Properties VI or any other person, entity or entities designated by the Reorganized Debtor to act in such capacity for the purpose of disbursing payments provided for in the Plan, and to assist in carrying out the terms of the Plan.

2

"**Effective Date**" means the first business day to fall at least 11 days from the date of Confirmation.

"**Filing Date**" means September 17, 2010.

"**Final Order**" means an order or judgment of the Court or the District Court as to which: a) the time for appeal has expired and no notice of appeal has been timely filed, or b) any appeal or petition for writ that has been filed has been withdrawn, dismissed or determined leaving the Court's order intact, and which is not subject to further review by appeal or otherwise.

"**Non-classified Claims**" means Claims of the type described in Article V of the Disclosure Statement.

"**Plan**" means the Debtor's Plan of Reorganization submitted along with this Disclosure Statement, as may be amended in the future.

"**Post Petition**" means events occurring or matters arising after the Filing Date and not otherwise deemed to have occurred or arisen before then.

"**Pro rata**" means proportionately so that the ratio of the consideration distributed on account of an Allowed Claim in a class or other defined group of claims to the consideration distributed on account of all Allowed Claims in the class or group is the same as the ratio of such Allowed Claim to all Allowed Claims in the class or group.

"**Real Property**" means Debtor's real property located at 224 Sea Cliff Avenue, San Francisco, California.

"**Reorganized Debtor**" means Debtor on and after the Effective Date of the Plan.

Case: 10-33637    Doc# 60    Filed: 06/02/11    Entered: 06/02/11 12:04:49    Page 3 of 22

"**Retained Claims**" means all claims that Debtor had as of the Filing Date, all claims that could be asserted by a trustee in the Case immediately before Confirmation (including claims arising under Code sections 362, 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, or 553 or otherwise), all claims listed in Debtor's Bankruptcy Schedules, including the claims against Jorei Enterprises, LLC and all claims that arose in favor of the Estate after the Filing Date, except as any of the foregoing claims have been expressly and explicitly waived in writing with Court approval.

"**Rules**" means the Federal Rules of Bankruptcy Procedure as applicable to the Case.

"**UST**" means the representative of the Office of the United States Trustee with responsibility for monitoring developments in the Case.

### B.   Undefined Terms

Terms used herein but not defined by the Plan or Disclosure Statement, but which are defined by the Code, have the meanings given to that term in the Code unless the context of the Plan clearly indicates or requires otherwise.

### C.   Rules of Construction, Interpretation and Time

In the event of any inconsistency between the Plan and the Disclosure Statement, the provisions of the Plan are controlling. The rules of construction set forth in Code section 102 shall apply to the Plan and the Disclosure Statement.  In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) shall apply.

### D.   Applicable Law

Case: 10-33637   Doc# 60   Filed: 06/02/11   Entered: 06/02/11 12:04:49   Page 4 of 22

Except insofar as federal law applies or the Plan specifically provides otherwise, the interpretation, implementation and enforcement of the Plan are governed by California law.

**E.    Integration and Modification**

Except as expressly provided otherwise in the Plan, (a) the Plan and any exhibits to it constitute the entire and complete agreement among the parties with claims or interests in Debtor's estate with respect to the matters addressed and transactions contemplated in the Plan, superseding any prior or contemporaneous oral or written agreements or representations concerning such matters or transactions, and (b) the rights or obligations contained in the Plan can be modified only (i) by a writing signed by the party to be held to the altered term or (ii) under Code Section 1127, if the modification has a material and adverse effect on the rights or remedies of nonsignatories.

II.    BACKGROUND

Debtor is a California corporation.  Debtor's only asset is its ownership of real property located at 224 Sea Cliff Avenue, San Francisco, California (the "Real Property").  The Real Property is a single family residence and is the home of Debtor's principal, Katherine Brugnara, her husband and four children.

Debtor acquired title to the Real Property in 2001 for $8,000,000 and invested approximately $2,000,000 in capital improvements.  The Real Property was appraised in August 2008 at a value of $17,800,000.  Debtor believes that the value of the Real Property has declined since that appraisal.  Debtor's current estimate is that the Real Property is worth between $14

5

Case: 10-33637   Doc# 60   Filed: 06/02/11   Entered: 06/02/11 12:04:49   Page 5 of 22

| | |
|---|---|
| 1 | million and $15 million based on a current valuation by Mark |
| 2 | Levinson of Sotheby's International. |
| 3 | The secured debt against the Real Property consists of: (i) |
| 4 | property taxes owed to the City and County of San Francisco; (ii) |
| 5 | a first deed of trust in favor of Wachovia/Wells Fargo |
| 6 | ("Wachovia"), which has filed a proof of claim in the sum of |
| 7 | $7,254,033.19; and, (iii) a second deed of trust in favor of |
| 8 | Jorei Enterprises, LLC ("Jorei"). The principal amount of the |
| 9 | debt to Jorei is $5,000,000; it arises out of a loan made by |
| 10 | Jorei to Brugnara Properties I, LP ("Brugnara I") and originally |
| 11 | secured against an office building owned at the time by Brugnara |
| 12 | I at 351 California Street, San Francisco, California. This |
| 13 | Debtor was a guarantor of the loan by Jorei to Brugnara I. |
| 14 | During a prior Chapter 11 case by Debtor, No. 09-30038 (the |
| 15 | "Prior Case"), a settlement was reached between Debtor and Jorei. |
| 16 | This Court approved the settlement on June 3, 2009. With respect |
| 17 | to this Debtor, the settlement provided in pertinent part for: a |
| 18 | reduction of Jorei's secured claim from $11,350,000 (plus accrued |
| 19 | interest) to $5 million; provision that the Jorei claim would be |
| 20 | due in full in five years, but no interest would accrue and no |
| 21 | payments would be due for the five years as long as Debtor did |
| 22 | not default under its agreement with Jorei and was able to cure |
| 23 | any default to Wachovia. |
| 24 | **III. SIGNIFICANT PRE-BANKRUPTCY EVENTS** |
| 25 | The Prior Case was dismissed on August 27, 2009, upon |
| 26 | Debtor's motion (which was originally denied but after |
| 27 | reconsideration, granted). One of the problems for Debtor's |
| 28 | remaining in the earlier bankruptcy was its inability to |

6

negotiate with Wachovia for modification of the loan secured by the first deed of trust against the Real Property. Following the dismissal of the Prior Case, Debtor was prepared to go back to Wachovia and resume negotiations for modification, which the bank would not discuss during the pendency of the Prior Case.

Those efforts were to be led by Luke D. Brugnara. Mr. Brugnara's negotiations were underway but not concluded when in June 2010, following his having suffered a federal criminal conviction, Mr. Brugnara was incarcerated. Following the conviction, in cases No. CR 08-0222-wha-MAG and CR 08-0236-mmc-MAG, each entitled *United States of America vs. Luke Brugnara* (collectively, the "Criminal Cases"), Mr. Brugnara was originally ordered to surrender to a federal facility pursuant to his sentence on August 30, 2010. However, in June 2010, Mr. Brugnara was ordered to report to a federal facility earlier and he did so on June 15, 2010.

At the present time Mr. Brugnara is serving his sentence in a federal correctional facility in Texarkana, Texas. Debtor, through Katherine Brugnara, who became the principal of the Debtor very suddenly in 2010 upon Mr. Brugnara's radical change in circumstances, is informed that Mr. Brugnara will be released from federal custody as early as June 2011, or no later than December 2011.

Mrs. Brugnara attempted to pick up the thread of discussions with Wachovia regarding a modification, but without success. She experienced the frustration that is common knowledge regarding loan modifications, and before she could make any headway with

Case: 10-33637    Doc# 60    Filed: 06/02/11    Entered: 06/02/11 12:04:49    Page 7 of 22

1  Wachovia, the bank recorded a notice of default and then

2  published a notice of a trustee's sale for its deed of trust.  To

3  stop that trustee's sale, this new Chapter 11 case was filed.

4      With Mr. Brugnara's sudden departure from the Bay Area and

5  his subsequent residence under circumstances that preclude all

6  but the most limited communication between him and Katherine

7  Brugnara, Mrs. Brugnara has been hard-pressed to deal with not

8  only the disruption to the lives of her and her children, but, to

9  the point here, with the legal issues regarding Wachovia's loan.

10 Mrs. Brugnara has also been put in a position where, although she

11 has, under the community property laws, ownership of significant

12 joint assets with Luke Brugnara, she has no effective access to

13 those assets other than the Real Property owned by the Debtor.

14     Mrs. Brugnara is informed that the United States Government,

15 in a pre-sentencing report ("PSR") furnished to the Court in the

16 Criminal Cases, ascertained that Mr. Brugnara's net assets, of

17 which Mrs. Brugnara owns an undivided 50% community interest, are

18 in excess of $20,000,000.00.  (Mrs. Brugnara has been attempting

19 to obtain a copy of the PSR and, if and when she is able to

20 obtain a copy and subject to privacy issues that may pertain,

21 will provide an appropriately redacted copy it to the UST.)

22     Mr. Brugnara's sudden absence and the consequent limitations

23 on her access to the community funds owned by Mr. and Mrs.

24 Brugnara contributed to the filing of this Chapter 11 case; the

25 ability to obtain access to those funds upon Mr. Brugnara's

26 release from custody will provide the means to bring any and all

27 arrearages current on the Wachovia loan and to pay any

28 outstanding tax claims of the City and County of San Francisco.

8

## IV.   SIGNIFICANT EVENTS IN THE CHAPTER 11 CASE

### A.   Administrative Matters:

1.   **Appointment of Responsible Individual:** On October 19, 2010 the Court entered its Order Designating Responsible Individual.  By this Order Katherine Brugnara, the president of the Debtor, was appointed as the individual responsible for the duties and obligations of the Debtor during the Case.

2.   **Appointment of Counsel:** On November 4, 2010, the Court approved the appointment of the Law Office of Joel K. Belway as Chapter 11 counsel for the Debtor over the objection of the UST.

3.   **Meeting of Creditors:** The meeting of creditors held pursuant to Code section 341 was held on October 26, 2010.  The meeting was conducted by the Office of the U.S. Trustee.

### B.   Other Matters:

1.   **Claims Bar Date:**  The Court established January 24, 2011 as the deadline for filing pre-petition (non-governmental) claims against the Debtor.  Governmental claims must be filed by 180 days from the Filing Date.

2.   **Monthly Operating Reports:** Debtor is in the process of bringing current its monthly operating reports since the petition.

3.   **Insurance:** Debtor is informed that insurance placed against the Real Property by Wachovia sufficiently insures the cost of replacing the improvements to the Real Property.  Debtor is informed that the amount of current insurance continues the amount of coverage that was in place before the filing of this Chapter 11 case.

9

1      4.   **Corporate Tax Returns:** Debtor is in the process of

2 filing all corporate tax returns that are due.

3      5.   **Claims Against Debtor's Estate:** Debtor's schedules

4 reflect secured claims of approximately $11,140,000, and

5 unsecured claims of $1,000. Wachovia was scheduled with a

6 secured claim of $6,140,000; it has filed a claim for

7 $7,254,033.19. The City and County of San Francisco ("City") has

8 filed a claim in the amount of $337,964.63 for taxes secured by

9 the real Property in the sum of $337,964.63 for real property

10 taxes for tax years 2008-09, 2009-10 and 2010-2011. The

11 California Franchise Tax Board ("FTB") has filed a claim in the

12 amount of $3,005.14 for corporate income taxes of $800 per year

13 plus interest and penalties for tax years 2008, 2009 and 2010.

14          **V.   SUMMARY OF THE PLAN OF REORGANIZATION**

15     **A.   Goal and Funding of the Plan**

16     By the Plan Debtor seeks to satisfy creditor claims. The

17 Plan is a contract between the Debtor and its creditors and

18 interest holders, and therefore is binding on the parties. To

19 become effective the Plan must be accepted by the vote of at

20 least one class of creditors whose claims are impaired, and the

21 Plan must be confirmed by order of the Court.

22     **B. Funding of the Plan:**

23     Funding of the payments to Class 1 will come from funds

24 Debtor will raise from its principal. Debtor's principal will

25 inject funds necessary to make the payments to Class 1. Debtor's

26 principal, Katherine Brugnara, holds an undivided community

27 property interest in assets which she is informed exceed $20

28 million in value. Her access to those assets has been and

1  remains impeded by the federal incarceration of her husband, Luke
2  Brugnara.  Mrs. Brugnara is informed that Mr. Brugnara will be
3  released from federal custody as soon as June 2011 or no later
4  than December 2011.  (Mr. Brugnara was sentenced to 18 months and
5  began the sentence in June 2010.)

6      Debtor anticipates that the payment to Class 2, which is not
7  due for four years, will come via a refinance or sale of the Real
8  Property or the injection of funds by the Debtor's principal.
9  Payments to the Classes 3 and 4 will come from an infusion of
10 capital from Debtor's principal.

11     **C.    Post Petition – Post Confirmation Operations:**

12     Debtor does not have "operations" as that term is normally
13 used in a Chapter 11.  Debtor will file post-confirmation
14 quarterly reports required by the U.S. Trustee, and pay the
15 required U.S. Trustee fees until such time as Debtor is prepared
16 to apply for a Final Decree.

17     **D.    Summary of the Plan and Classification of Claims and**
18 **Intersts:**

19     **1.    Non-Classified Claims**

20     Administrative Claims: Holders of allowed administrative
21 claims will receive payment of their claims in full on the
22 Effective Date or within ten days from the date the claim becomes
23 an allowed administrative claim, whichever occurs later unless
24 the Debtor and administrative creditor agree to other less
25 favorable treatment.  Debtor does not anticipate there being
26 administrative claims other than the tax claim of the FTB (which
27 has been partially paid by Debtor's principal) and the attorney's
28 fees of its counsel.  Debtor's best estimate at this time is that

the administrative claims for its counsel will be $20,000 and the balance of the FTB's claim will be less than $1,500. Debtor's counsel received a pre-petition retainer of $7,000 from Katherine Brugnara.

   **2.  Classified Claims:**

   **Class 1 – Secured Claim of Wachovia:** Class 1 consists of the allowed secured claim of Wachovia which is secured in first position against Debtor's real property located at 224 Sea Cliff Avenue, San Francisco, California.  The Class 1 claim is impaired.

   **Class 2 – Secured Claim of Jorei Enterprises, LLC:** Class 2 consists of the allowed secured claim of Jorei, which claim is secured in second position against Debtor's real property located at 224 Sea Cliff Avnue, San Francisco, California.  The Class 2 Claim is unimpaired.

   **Class 3 - Secured Claim of the City and County of San Francisco:** Class 3 consists of the claim of the City and County of San Francisco, secured by the real Property.  The Class 3 claim is unimpaired.

   **Class 4 – Claims of all General Unsecured Claims:** Class 4 consists of the allowed general unsecured claims.  The Class 4 claims are impaired.

   **Class 5 – Interests of Debtor's Interest Holder:** Class 5 consists of all holders of interests in the Debtor.

   **VI.  TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

   Holders of the Classified Claims and interests described above shall receive distributions as set forth below in full satisfaction of such Allowed Claims or interests.  In no event

12

1  shall the holder of an Allowed Claim receive a distribution of a

2  value greater than 100% of the amount of such allowed claim.

3  **Class 1 – Secured Claim of Wachovia:** The allowed Class 1

4  claim shall have two treatment options from which to select.

5  Under Option A the claim will be deemed a $5,000,000 claim as of

6  the Confirmation.  The claim shall accrue interest at 4% per

7  annum.  Payments shall be interest only and the debt shall be due

8  in full 10 years from the Confirmation.  Under Option B, the

9  claim will be allowed in the amount of $6,140,000, and shall

10 accrue interest at 3% interest only, due in 10 years.  Under

11 Options A and B, the loan shall be deemed reinstated upon

12 Confirmation.  If the Class 1 claim does not select an option

13 (selection must be made on or before the voting deadline on the

14 plan) it will be deemed to have selected Option A.

15     The right to payments under either option shall begin

16 accruing on the Effective Date.  Payments shall commence in the

17 month of March 2012; on March 15, 2012 all payments due on or

18 after the Effective Date shall be made on the allowed claim.

19 Payments shall be due by the 15th of each month and shall be

20 deemed late if not paid by the 25th of each month.  The Class 1

21 creditor is impaired.

22 **Class 2 – Secured Claim of Jorei Enterprises, LLC:** The

23 allowed Class 2 claim shall be treated pursuant to the terms of

24 the settlement agreement between Debtor and Jorei.  Pursuant to

25 that agreement the claim shall be due in four years and shall not

26 accrue interest except as provided in the settlement agreement.

27 The Class 2 creditor is not impaired.

28

SECOND AMENDED DISCLOSURE STATEMENT FOR
CHAPTER 11 PLAN OF REORGANIZATION AS MODIFIED

Case: 10-33637   Doc# 60   Filed: 06/02/11   Entered: 06/02/11 12:04:43   Page 13 of
22

**Class 3 – Secured Claim of the City and County of San Francisco:** The allowed Class 3 claim shall be paid in full in three equal installments, due on March 15, 2012, May 15, 2012 and July 15, 2012. The allowed Class 3 claim shall retain all rights and remedies regarding any delinquent property taxes owed by the Debtor. The Class 3 claim is unimpaired.

**Class 4 – Claims of all General Unsecured Claims:** Class 4 consists of the allowed general unsecured claims of all creditors. Class 4 claimants will receive a pro rata share of $1,000 to be distributed three months from the Effective Date. The Class 4 creditors are impaired.

**Class 5 – Interests of Debtor's Interest Holder:** Class 5 consists of all holders of interests in the Debtor. Class 5 interest holders will not receive any distributions under the plan. Their interests, however, will not be canceled and holders will retain their interests. Class 5 is not impaired under the Plan.

**Sale of 224 Sea Cliff Avenue, San Francisco, CA:** If Debtor has not commenced payments to Creditors as set forth above by March 15, 2012, Debtor will immediately list and sell its real property at 224 Sea Cliff Avenue, San Francisco, California; if Debtor has not entered into a contract and opened a bona fide escrow for the sale of the property by May 15, 2012, the Secured Creditors shall thereupon, without necessity of further order of Court, have the right to exercise any foreclosure rights with respect to their Claims.

**VII. MEANS FOR IMPLEMENTATION OF THE PLAN**

SECOND AMENDED DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF REORGANIZATION AS MODIFIED

Case: 10-33637   Doc# 60   Filed: 06/02/11   Entered: 06/02/11 12:04:43   Page 14 of 22

**A. Funding of the Plan:** As noted above, funding of the payments to Class 1 will come from funds Debtor will receive from its principal. Debtor's principal will inject the funds necessary to make the payments to Class 1. Debtor anticipates that the payment to Class 2, which is not due for four years, will come via a refinance or sale of the Real Property or from capital contributed by Debtor's principal. Payments to the Class 3 and 4 creditors will come from an infusion of capital from Debtor's principal.

**B. Sale of 224 Sea Cliff Avenue, San Francisco, CA:** If Debtor has not commenced payments to Creditors as set forth above by March 15, 2012, Debtor will immediately list and sell its real property at 224 Sea Cliff Avenue, San Francisco, California; if Debtor has not entered into a contract and opened a bona fide escrow for the sale of the property by May 15, 2012, the Secured Creditors shall thereupon, without necessity of further order of Court, have the right to exercise any foreclosure rights with respect to their Claims.

**C. Distribution of Funds:** The Disbursing Agent will distribute funds on account of the allowed claims pursuant to the terms of the Plan. The Disbursing Agent shall also be responsible for reserving amounts for payment of any disputed claims until such time that the disputed claims are either disallowed or become allowed claims.

**D. Post-Confirmation Operations and Administration:** Until such time as a Final Decree is entered the Reorganized Debtor will file the necessary post-confirmation operating reports and pay any required fees to the U.S. Trustee. The post-confirmation

members/officers of the Reorganized Debtor shall be Katherine
Brugnara. Professional fees and costs incurred post-confirmation
in connection with implementation of the Plan shall be paid in
the ordinary course of business and without the need of review or
approval by the Court.

   **E.   Objections to Claims:** The Reorganized Debtor will have
the right and standing, but not the obligation to:

   1.   Object to, contest and litigate to Final Order
(including the exhaustion of any appeals) the allowance of any
claim, whether or not such claim is listed in the Debtor's
Schedules as disputed, contingent or unliquidated; or

   2.   As provided by Code Section 502(c), ask the Court to
estimate any claim for the purpose of voting on confirmation of
the plan by means of filing an objection to such claim.  The
Disbursing Agent shall also have the authority to settle,
compromise, or negotiate the withdrawal of objections to Disputed
Claims or the withdrawal of claims themselves.

   **F.   Payment Upon Resolution of Disputed Claims:** While the
Reorganized Debtor will reserve amounts for any disputed claims,
the Reorganized Debtor will not make any payments to holders of a
disputed claim until such disputed claim becomes an allowed claim
and all counter-claims of the Debtor against the holder of such
Claim have been fully resolved, either by means of a settlement
or a Final Order.

   **G.   Treatment of Executory Contracts and Unexpired Leases:**
All leases or executory contracts will be assumed upon
confirmation of the Plan.  Any lessee asserting a claim or a

Case: 10-33637   Doc# 60   Filed: 06/02/11   Entered: 06/02/11 12:04:43   Page 16 of
22

"cure" under any lease must file a claim within 30 days of the Effective Date.

**H.** **Income Tax Consequences of the Plan:** The Plan may give rise to tax consequences to creditors and interest holders. Each creditor and interest holder is urged to consult with his, her or its own tax advisor regarding the federal, state and local tax consequences of the Plan. Holders of allowed claims will cooperate with the Reorganized Debtor to the extent the Reorganized Debtor requires said holders to provide tax information in connection with their receipt of Disbursements under the Plan.

## VIII. THE PLAN CONFIRMATION PROCESS

**A.** **Confirmation Standards:**

For the Plan to be confirmed, the Court must determine that the requirements of Code Section 1129 have been satisfied. Among other things, Code Section 1129 requires at least one class of claims that is impaired under the Plan to have voted to accept the Plan.

**B.** **Classification of Claims:**

The Code requires that a plan of reorganization place each claim in a class with other claims that are "substantially similar". Generally speaking, each secured claim is separately classified and claims are grouped based on their relative priority or similarity. Debtor believes that the classification system set forth in Plan and described in this Disclosures Statement meets the requirements of the Code.

**C.** **Creditor Acceptance – Voting on the Plan:**

SECOND AMENDED DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF REORGANIZATION AS MODIFIED

Case: 10-33637   Doc# 60   Filed: 06/02/11   Entered: 06/02/11 12:04:43   Page 17 of 22

In order for the Court to determine that the Plan has been accepted, two-thirds in amount and a majority of the number of allowed claims in each impaired class of creditors voting on the Plan must vote to accept the Plan. Only the votes of holders of allowed claims will be counted unless the Court orders otherwise. In order to vote a holder of a claim must complete and sign the ballot provided along with the Disclosure Statement and Plan and mail it to Debtor's counsel: Law Office of Joel K. Belway, P.C., 235 Montgomery Street, Suite 668, San Francisco, California 94104. The date by which the ballots must be received is set forth in the Notice accompanying the Disclosure Statement and Plan. If a class that is impaired under the Plan votes to not accept the Plan, Debtor will seek confirmation under Code Section 1129(b), which is discussed below in the section entitled "Cramdown of the Plan".

**D. Best Interest Test:**

Notwithstanding acceptance of the Plan by creditors, Code Section 1129(a)(7) requires the Court to independently determine that the Plan is in the best interest of holders of Allowed Claims whose Claims are part of an impaired class. The "best interest" test requires that the Court find that the Plan provides to each member of an impaired class of claims a recovery that has a present value at least equal to the present value of the distribution that each claim holder would receive from the Debtor if the Debtor were liquidated through a Chapter 7 proceeding.

Debtor believes that the best interests of creditors are served by Confirmation of the Plan. No greater benefit could be

SECOND AMENDED DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF REORGANIZATION AS MODIFIED

Case: 10-33637    Doc# 60    Filed: 06/02/11    Entered: 06/02/11 12:04:43    Page 18 of 22

achieved by the secured and unsecured creditors under Chapter 7. The Plan provides for full payment of principal due at present day value to all secured and unsecured creditors.  It also preserves the appreciation and capital investment of the Debtor which would be lost under Chapter 7.

**E.   Feasibility of the Plan:**

As a condition to Confirmation the Court must find that Confirmation is not likely to be followed by liquidation or the need for further reorganization.  The Court must therefore find that the Plan is feasible.  Debtor contends its Plan is feasible. If the Plan is confirmed, Debtor will cure and reinstate the Class 1 claimant, and would have four years to pay Class 2 through a sale or refinance at a time when the value of the Real Property would support such an effort.  With respect to payments to Class 3, Debtor's principal will inject funds required to make such payments.

**F.   Modification of the Plan:**

Debtor may modify the Plan at any time before Confirmation. In the event of a modification to the Plan, the Court may require Debtor to provide notice of the modification.  Any holder of a claim that has accepted or rejected the Plan prior to modification, will be held to have accepted or rejected the modified Plan unless, the Court determines that the holders of the claims should be granted additional time to change the previous vote, and the holder does in fact change his, her or its vote.

**G.   Cramdown of the Plan:**

SECOND AMENDED DISCLOSURE STATEMENT FOR
CHAPTER 11 PLAN OF REORGANIZATION AS MODIFIED

Case: 10-33637   Doc# 60   Filed: 06/02/11   Entered: 06/02/11 12:04:43   Page 19 of
22

Section 1129(b) of the Code permits a Debtor to confirm a Plan even if one or more classes of claimants does not accept the Plan.  In the event that an impaired class fails to accept the Plan, Debtor intends to seek Confirmation by way of a cramdown pursuant to Code Section 1129(b).  In order for Debtor's Plan to be confirmed, the claims in the impaired class that voted to reject the Plan must receive treatment that is "fair and equitable" as that term is described in Code Section 1129(b)(2). Debtor believes it will be able to satisfy this requirement if necessary.

### IX.   EFFECT OF CONFIRMATION

**A.   Revesting:**

Except as otherwise provided by the Plan, Confirmation revests all property of the estate in the Reorganized Debtor.

**B.   Discharge:**

Confirmation of the Plan shall bind all holders of claims and interests, whether or not they accept the Plan.  Confirmation of the Plan will discharge Debtor from all debts pursuant to Code Section 1141(d)(1).  Upon Confirmation, all holders of claims and interests shall be precluded from asserting any further claim against the Debtor's assets or against the Reorganized Debtor to the extent any such claim is based upon any occurrence or transaction or other activity occurring prior to the Confirmation date.

### X. MODIFICATION OF THE PLAN

Debtor may modify the Plan at any time before Confirmation. In the event of a modification to the Plan, the Court may require Debtor to provide notice of the modification by way of additional

Case: 10-33637   Doc# 60   Filed: 06/02/11   Entered: 06/02/11 12:04:43   Page 20 of 22

disclosures to the creditors and interest holders.  Any holder of
a claim that has accepted or rejected the Plan prior to
modification, will be held to have accepted or rejected the
modified Plan unless the Court determines that the holders of
claims should be granted additional time to change the previous
vote, and the holder does in fact change his, her or its vote.

## XI.   JURISDICTION RETAINED BY THE COURT

Until the Case is closed, the Court shall retain
jurisdiction under 28 U.S.C. Sections 1334 and 157 over the
estate in any proceedings arising in the Case, arising under the
Code, or related to the Case in order to carry out the
provisions, purposes and intent of the Plan or any modification
thereto, including:

    A. Modification of the Plan under Code Section 1127(b);

    B. Interpretation of the Plan;

    C. Entry of orders to implement or enforce the Plan;

    D. Determination of the allowability and amount of claims;

    E. Determination of the Debtor's or the estate's tax
       liability as necessary;

    F. Approval of the assumption, assignment or rejection of
       any executory contract or unexpired lease of the Debtor
       to the extent such assumption, assignment or rejection
       has not occurred prior to Confirmation;

    G. Awarding compensation or reimbursement of professionals;

    H. Adjudicating controversies, including those involving
       Retained Claims; and

    I. Entry of a decree and order closing the Case.

SECOND AMENDED DISCLOSURE STATEMENT FOR
CHAPTER 11 PLAN OF REORGANIZATION AS MODIFIED

```
 1   Dated: June 2, 2011              BRUGNARA PROPERTIES VI

 2
                                      By: /s/ Katherine L. Brugnara
 3                                        KATHERINE L. BRUGNARA
 4                                    Its: President

 5

 6
     Dated: June 2, 2011              THE LAW OFFICE OF JOEL K. BELWAY
 7                                    Professional Corporation

 8
                                      By: /s/ Joel K. Belway
 9                                        JOEL K. BELWAY
10                                        Attorney for Debtor

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

22